# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**GARY HORNE,**
**Claimant Below, Petitioner**

**FILED**

December 6, 2019
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 18-0678** (BOR Appeal No. 2052380)
(Claim No. 2015014126)

**MCDOWELL COUNTY COMMISSION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Gary Horne, by Counsel Gregory S. Prudich, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). McDowell County Commission, by Counsel Lisa Warner Hunter, filed a timely response.

The issues on appeal are an additional compensable condition, temporary total disability benefits, and medical benefits. The claims administrator closed the claim for temporary total disability benefits on June 23, 2015. On October 21, 2015, the claims administrator denied a request for spinal surgery. The claims administrator denied the addition of spinal stenosis to the claim on February 4, 2016. The Office of Judges affirmed the decisions in its December 18, 2017, Order. The Order was affirmed by the Board of Review on June 29, 2018.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Horne, a road deputy, was injured in the course of his employment on September 10, 2014, when he slipped and fell while getting into his cruiser. A September 11, 2014, treatment note from Bluefield Regional Medical Center indicates Mr. Horne was seen for lower back pain after slipping and falling the day before. X-rays showed no abnormalities but did show degenerative and postoperative changes. Mr. Horne was diagnosed with lumbosacral sprain and back contusion. The Employee's and Physician's Report of Injury, completed on September 17, 2014, indicates Mr. Horne was injured when he slipped and fell while getting back into his cruiser. The physician's section was not completed.

1

Mr. Horne has a long history of lower back problems. A November 4, 1998, lumbar MRI showed desiccation of the L4-5 disc with early degenerative changes at L5-S1. There was also early spondylosis and a protrusion at L5-S1with mild bilateral S1 neural impingement. A lumbar myelogram performed on February 12, 1999, showed a broad-based disc protrusion at L4-5 and L5-S1. There was no significant stenosis.

On April 22, 1999, Robert Saltzman, M.D., performed a disability evaluation in which Mr. Horne reported lower back and right hip pain that radiated into his toes. Dr. Saltzman assessed 13% impairment for bulging discs. He noted that there was no anatomic radiculopathy. He found that Mr. Horne had remained stable for the past two months and concluded that he could return to work with no limitations other than those ordered by his treating physician. Dr. Saltzman diagnosed degenerative disc disease at L4-L5. A lumbar MRI showed degenerative disc disease with no evidence of disc herniation or stenosis on January 21, 2000.

In a February 29, 2000, disability evaluation, T. Scott Ellison, M.D., diagnosed low back pain with lower extremity tingling and degenerative disc disease at L4-5 and L5-S1. Dr. Ellison noted that the symptoms were not present prior to a work-related accident in 1999. Dr. Ellison could not state that the work injury was the cause of the symptoms. He found Mr. Horne could return to work as he had reached maximum medical improvement. A few months later, on May 11, 2000, Tim Adamson, M.D., noted degenerative disc disease at multiple levels with no indication of disc herniation or neural compression.

A lumbar x-ray taken on May 18, 2002, showed partial lumbarization of the S1 vertebral body. A lumbar MRI was performed on August 13, 2003, and showed small protrusions at L4-5 and L5-S1. Another lumbar MRI was performed on October 20, 2003, and indicated early degenerative changes at L5-S1 with bulging annulus and desiccation of L4-5. On April 7, 2005, a lumbar MRI showed desiccation of L4-5 and L5-S1 and bulging annulus at L5-S1. Mr. Horne underwent fusions at L4-5 and L5-S1 with instrumentation and decompression on July 27, 2005.

In July of 2012, Mr. Horne was treated by Mahesh Patel, M.D., who noted that he reported lower back pain. He was seen again in April of 2013 and March of 2014 for similar complaints. On August 7, 2014, Robert Kropac, M.D., performed a consultation and evaluation in which he noted that Mr. Horne reported neck pain and bilateral shoulder pain. He also reported constant lower back pain that was aggravated by bending, stooping, sitting, and standing.

After the compensable injury at issue, a lumbar MRI was performed on October 5, 2014. It revealed fusions from L3-L5, degenerative annular bulging from L1-L3, and moderately severe degenerative facet hypertrophy at L2-3. Mr. Horne was treated by Florence Neri, M.D., who indicated on October 13, 2014, that Mr. Horne complained of low back pain. Dr. Neri diagnosed low back strain and excused him from work for two weeks. Mr. Horne was seen by Jody Helms, M.D., on November 6, 2014. Dr. Helms diagnosed cervical and lumbar strain with some radicular complaints in both the upper and lower extremities and prescribed physical therapy. The claim was held compensable for low back contusion on November 17, 2014.

A cervical MRI performed on December 1, 2014, showed mild lordotic straightening and mild multilevel degenerative changes. Mr. Horne sought treatment from Bluefield Regional Medical Center Emergency Room on December 15, 2014, for neck pain. Mr. Horne reported pain in his lumbar and cervical spine as well as radicular symptoms into both arms and the right leg. He was diagnosed with sciatica, paresthesia, and degenerative disc disease. On December 16, 2014, the claims administrator authorized temporary total disability benefits until Mr. Horne was released to return to work.

Dr. Kropac performed an independent medical evaluation on June 11, 2015, in which he noted that Mr. Horne had previously been granted 13% impairment for a lower back injury that occurred in 1999. Dr. Kropac opined that Mr. Horne could currently return to light duty work. He also opined that the lumbar symptoms all preexisted the compensable injury and noted that Mr. Horne was seen in his office a week before the compensable injury with ongoing neck and lower back pain. Dr. Kropac therefore apportioned 50% of his complaints to preexisting conditions. He concluded that Mr. Horne had reached maximum medical improvement and assessed 4% cervical impairment and 0% lumbar impairment.

Mr. Horne was granted a 4% permanent partial disability award on June 19, 2015. The claims administrator closed the claim for temporary total disability benefits on June 23, 2015. On September 16, 2015, Mr. Horne underwent a lumbar MRI that showed a prior fusion from L4-S1 as well as degenerative changes at L3-4 with mild bilateral neural foraminal narrowing and borderline spinal stenosis. The claims administrator denied a request for spinal surgery on October 21, 2015. Dr. McCarthy completed a diagnosis update on January 7, 2016, and requested that lumbar spinal stenosis be added to the claim. The claims administrator denied the request on February 4, 2016.

On May 9, 2016, Marsha Bailey, M.D., performed an independent medical evaluation in which she opined that Mr. Horne had reached maximum medical improvement. She noted that the cervical MRI showed only age-related changes. Dr. Bailey opined that surgical intervention was not necessary given that Mr. Horne had no acute radiographic studies, had a normal neurological examination, and had nonanatomic and nondermatomal complaints. Dr. Bailey also opined that spinal stenosis should not be added to the claim given the radiographic evidence.

Mr. Horne testified in a deposition on September 23, 2016, that prior to the compensable injury, he had no difficulties performing his job duties. After the injury occurred, he had worsening pain in his lower back, hips, and right leg. Mr. Horne admitted that back pain was common for him prior to the compensable injury. He stated that he sought treatment for it in the past and that an MRI was ordered before the compensable injury but not completed since the symptoms subsided. Mr. Horne stated that after his first back surgery he was still working and exercising and did not have significant symptoms. Mr. Horne testified that between his back surgery and the compensable injury, he sought treatment for back pain twice and had no radicular symptoms. Lastly, he asserted that prior to the compensable injury, he reported aches and pains to Dr. Kropac but denied reporting constant lower back pain.

Dr. McCarthy testified in a deposition on September 23, 2016, that Mr. Horne tried all available conservative treatment with no success. He has not released Mr. Horne to return to work and opined that lumbar surgery was necessary. Dr. McCarthy asserted that Mr. Horne was asymptomatic prior to the compensable injury and opined that the need for surgery was related to the fall, not degenerative changes. Dr. McCarthy admitted on cross-examination that his understanding of Mr. Horne's condition prior to the compensable injury is based solely on what Mr. Horne told him. Dr. McCarthy reviewed no medical records, x-rays, or MRIs prior to the compensable fall.

In an October 6, 2016, record review, P. Kent Thrush, M.D., noted that he reviewed extensive medical records, evaluations, and the deposition testimony of Mr. Horne and Dr. McCarthy. Dr. Thrush also noted that Mr. Horne had lower back pain and surgery prior to the compensable injury. Dr. Thrush further found that Mr. Horne was examined on August 7, 2014, by Dr. Kropac who noted that Mr. Horne reported constant lower back pain. Dr. Thrush opined that there was no objective or logical reason for Mr. Horne to undergo lower back surgery. Dr. Thrush stated that he reviewed the September 16, 2015, MRI and the findings noted would not be severe enough to proceed with surgery. He opined that Dr. McCarthy recommended surgery based solely on Mr. Horne's objective complaints. Dr. Thrush stated that the arthritic changes seen on MRI are to be expected following a spinal surgery ten years prior. He found that it would not be reasonable to perform surgery based on Mr. Horne's current diagnostic tests. Dr. Thrush further opined that spinal stenosis should not be added to the claim as it is the result of his prior spinal surgery.

Dr. Thrush performed an independent medical evaluation on April 4, 2017, in which he found Mr. Horne had reached maximum medical improvement at the time that his temporary total disability benefits were suspended. Dr. Thrush disagreed with Dr. McCarthy's assertion that Mr. Horne requires surgery. Dr. Thrush stated that surgery is not indicated for a low back contusion or a low back sprain. Dr. Thrush further opined that Mr. Horne's spinal stenosis was a result of degenerative changes and unrelated to the compensable injury. Dr. Thrush noted that Dr. McCarthy stated in his deposition that the surgery would be to treat mild spinal stenosis and moderate facet arthropathy, neither of which is a compensable condition in the claim.

Dr. Bailey performed a record review on April 10, 2017, in which she found Mr. Horne reached maximum medical improvement on or around December 15, 2014. She opined that the surgery requested by Dr. McCarthy was not medically necessary. She also stated that it may not help relieve Mr. Horne's symptoms. Dr. Bailey stated that the symptoms were the result of arthritis. She noted that Dr. McCarthy was unaware of Mr. Horne's preexisting complaints when he rendered his opinions.

The Office of Judges affirmed the claims administrator's decisions denying the addition of spinal stenosis to the claim, denying authorization of surgery, and closing the claim for temporary total disability benefits. Regarding the addition of spinal stenosis to the claim, the Office of Judges found that Mr. Horne had a significant back condition prior to the compensable injury. He sustained a work-related back injury in 1998 and underwent surgery in 2005. The postoperative diagnosis was degenerative joint disease and degenerative disc disease from L4-S1. The Office of

4

Judges found that Mr. Horne became symptomatic again in 2012 when he sought treatment from Dr. Patel. He returned in April of 2013 and March of 2014 with complaints of lower back pain and limited range of motion. The Office of Judges found that Mr. Horne reported lower back pain to Dr. Kropac a month before his compensable injury in this case. The Office of Judges noted that he denied reporting lower back pain to Dr. Kropac; however, the Office of Judges found Dr. Kropac's description of the symptoms to be too specific to be a recording error. The Office of Judges determined that Dr. McCarthy's opinion that spinal stenosis should be added to the claim was unreliable. Dr. McCarthy asserted that since Mr. Horne was symptom free prior to the compensable injury, his back condition should be compensable. The Office of Judges found that he admitted on cross-examination that he had reviewed none of Mr. Horne's medical records prior to his compensable injury. The Office of Judges therefore concluded that spinal stenosis was not a compensable component of the claim.

The Office of Judges next found that the requested lower back surgery should not be authorized. It found that Dr. McCarthy stated in his deposition that the surgery was partly to treat radiculopathy; however, a review of his treatment notes shows no diagnosis of lumbar radiculopathy. His physical examinations are also not indicative of stenosis. The Office of Judges further found that the independent medical evaluations of record also show no indication of lumbar radiculopathy. It noted that Dr. Bailey opined in her evaluation that Mr. Horne's MRIs show no indication of an acute injury and the EMG showed no radiculopathy. She opined that surgery was not necessary. Dr. Thrush agreed with Dr. Bailey's opinion. He stated that the spinal stenosis was very mild and that surgery should not be performed. Dr. Thrush stated that Dr. McCarthy's opinion was based on Mr. Horne's subjective complaints rather than the medical evidence. The Office of Judges concluded that the requested surgery should be denied as it was not necessary to treat a compensable condition in the claim.

Lastly, the Office of Judges determined that Mr. Horne was awarded temporary total disability benefits from September 11, 2014, until he was released to return to work. On December 15, 2014, the claims administrator suspended benefits based on evidence that Mr. Horne had been released to return to work. The specific evidence was not indicated in the claims administrator's letter. Then, on December 16, 2014, the claims administrator issued a decision stating that temporary total disability benefits had been approved and would continue until Mr. Horne was released to return to work. The Office of Judges was unable to determine for what period after December 16, 2014, Mr. Horne received benefits. It concluded that Mr. Horne was entitled to benefits until May 21, 2015, the date on which Dr. McCarthy stated that Mr. Horne had reached maximum medical improvement for his compensable injury. Dr. McCarthy released Mr. Horne to return to work on that date with restrictions. The Office of Judges noted that the December 15, 2014, claims administrator's decision to close the claim for temporary total disability benefits was rendered moot by the December 16, 2014, decision authorizing benefits. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on June 29, 2018.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Compensability of additional conditions is decided under the same standard as compensability of an injury. Therefore, in order for an additional condition to be

compensable it must be the result of a personal injury that was received in the course of employment, and it must have resulted from that employment. *See Barnett v. State Workmen's Compensation Commissioner*, 153 W.Va. 796, 172 S.E.2d 698 (1970). In this case, Mr. Horne requested that spinal stenosis be added to the claim as a compensable condition. Mr. Horne fell and sustained a back contusion. As Drs. Bailey, Thrush, and Kropac all noted, the lumbar spine symptoms preexisted the compensable injury. Dr. Thrush opined that Mr. Horne's spinal stenosis is to be expected after the back surgery he underwent ten years prior and is a naturally occurring degenerative process. Since spinal stenosis is not a compensable condition, surgery for it was also properly denied. The Office of Judges was also correct to affirm the grant of temporary total disability benefits until May 21, 2015, the date on which Mr. Horne was found to have reached maximum medical improvement.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 6, 2019**

**CONCURRED IN BY:**
Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison